**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**ESTATE OF Herbert CAMMON, Defendant–Appellant.**

No. 90–1984.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1991.

Decided April 12, 1991.

Joseph J. Hasman, Steven P. Mandell, Peterson & Ross, Chicago, Ill., Ann M. Reed, Metropolitan Life Ins. Co., New York City, for plaintiff-appellee.

Stephen E. Smith, Fredrick Rothenberg, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Herbert Cammon and Carol DiPasalegne married in April 1982. Four days before the wedding, Herbert applied for a $250,-000 life insurance policy on Carol's life. Sixteen days after the wedding, Herbert called the insurer to confirm that the policy was in force. Carol was brutally murdered later that day. Illinois charged Herbert with the murder. After a jury split 10–2 for conviction, Herbert asked for retrial by the court. A judge acquitted him. In this suit, a variant on the murdering-heir theme, Metropolitan Life asks for a declaratory judgment that Herbert not only slew Carol but also formed his plan before he purchased the policy. Insurance does not cover material risks hidden from the underwriter. Just as an insurer is entitled to know about diseases that affect the life expectancy of the insured, so it is entitled to know about other, more immediate risks, such as impending homicide. Obviously no intending murderer will tell the insurer of his plans; just as certainly, putting the death benefit out of reach will reduce the incidence of murder. Metropolitan Life believes that in a civil case, with a lower burden of proof, it can establish that before buying the policy Herbert formed a plan to kill Carol.

Metropolitan Life was not put to its proof. Herbert did not satisfy the insurer's discovery requests, and the district judge entered a default judgment. 1989 WL 153558, 1989 U.S. Dist. LEXIS 13384 (N.D.Ill.), rehearing denied, 1990 WL 44687, 1990 U.S. Dist. LEXIS 3852. His estate (Herbert died in April 1990) contends that the judge should have used some lesser sanction. Several jurisdictional hurdles lie between us and that question.

■ Appellate jurisdiction is the first. On November 7, 1989, the district judge entered an order stating that "plaintiff's motion for default judgment is granted." This was not appealable; it is one thing to grant a motion and another to enter a judgment. Metropolitan Life wanted a declaratory judgment, which the district court had yet to provide. Nonetheless, Cammon (as we call Herbert and his estate, without distinguishing the two) filed a notice of appeal. We dismissed this and gave two reasons: first, the absence of relief made the document non-final, see *Cleaver v. Elias*, 852 F.2d 266 (7th Cir.1988); *Foremost Sales Promotions, Inc. v. Director, BATF*, 812 F.2d 1044 (7th Cir.1987); second, Cammon's pending motion for reconsideration under Fed.R.Civ.P. 59 prevented appeal. The district court denied the motion and on April 6, 1990, entered an order on the form used for Rule 58 judgments. This order provides in full:

> IT IS ORDERED AND ADJUDGED pursuant to the Memorandum Opinion dated November 7, 1989, default judgment is entered in favor of the plaintiff, METROPOLITAN LIFE INSURANCE COMPANY and against defendant HERBERT CAMMON. Final judgment is hereby entered accordingly.

This document, like the order of November 7, neglected to supply the declaratory relief Metropolitan Life requested—for that matter, to provide any relief. It was accordingly not an appealable judgment. Nonetheless, Cammon filed a second notice of appeal. Metropolitan Life took the proper step of asking the district judge to award some relief. On May 7 the court amended its order by adding a declaratory judgment

that Metropolitan Life has no liability under the policy but must refund the premium.

Cammon contends that the May 7 judgment is invalid because his appeal from the April 6 judgment transferred jurisdiction to this court. He could not be more wrong. It is the appeal from that April 6 "judgment" that is ineffectual. We had already held that no appeal would lie until the judge entered declaratory relief. Why Cammon filed a notice of appeal from the document entered on April 6 is a mystery to us. It is also mysterious why the district judge omitted any relief. Cammon's premature notice of appeal did not prevent the judge from correcting his oversight and entering final judgment.

Having filed two appeals from non-final documents, Cammon neglected to file a notice of appeal from the final judgment. It is tempting to apply the three-knockdown rule and stop the contest. Cammon is saved, however—not by the bell, but by Fed.R.App.P. 4(a)(2), which treats a premature notice of appeal as if it had been filed after the entry of judgment. This rule "permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment . . . when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment." *FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.*, — U.S. ——, 111 S.Ct. 648, 653, 112 L.Ed.2d 743 (1991) (emphasis in original). The district court's opinions announce a decision that was appealable as soon as the proper judgment was entered. Cammon's notice of appeal accordingly sprang into force when the final judgment was entered on May 7.

Before the entry of default, Cammon filed a motion arguing that the court lacks subject-matter jurisdiction. The judge brushed aside this motion, refusing to entertain argument, and then, when entering the default, called the question "moot". It was and is not moot. No court may enter judgment on the merits—which a default judgment is—if it lacks jurisdiction. A federal court must examine its own jurisdic-

tion whether or not the parties question it, and it certainly may not disregard jurisdictional questions that have been raised explicitly.

■ Jurisdiction is based on diversity of citizenship. Cammon was a citizen of Illinois, and Metropolitan Life is a New York corporation with its principal offices in New York. Cammon believes that Metropolitan Life also is a citizen of Illinois because its midwest office, through which Cammon dealt, is in Chicago. This court follows the "nerve center" approach to corporate citizenship: a corporation has a single principal place of business where its executive headquarters are located. *Kanzelberger v. Kanzelberger*, 782 F.2d 774 (7th Cir.1986). Although some courts have rejected the nerve center approach, e.g., *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090 (9th Cir.1990), all agree that corporations have *one* "principal" place of business for purposes of 28 U.S.C. § 1332(c)(1). That Metropolitan Life does lots of business in Illinois is accordingly irrelevant, so long as the record reveals (as it does) that its "principal" place of business is elsewhere. *Hayes v. Allstate Insurance Co.*, 722 F.2d 1332, 1334 n. 3 (7th Cir.1983); *Celanese Corp. v. Vandalia Warehouse Corp.*, 424 F.2d 1176, 1178 (7th Cir.1970).

■ Cammon seizes on the proviso in § 1332(c)(1) that "in any direct action against the insurer of a policy or contract of liability insurance ... such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as" the states of its incorporation and principal place of business. He asks us to treat Metropolitan Life as sharing the Illinois citizenship of Carol Cammon, the insured. Yet this is not an action "against the insurer"; Metropolitan Life is the plaintiff, which makes all the difference. *Northbrook National Insurance Co. v. Brewer*, 493 U.S. 6, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989). To Cammon's plea that we create an "exception" to *Northbrook* for life insurance, it is enough to reply that the entire proviso is inapplicable to life insurance. An exception to an irrelevance is pointless. Nothing in the proviso defeats jurisdiction either way.

■ Short work can be made of Cammon's remaining jurisdictional arguments. He invokes the "probate exception" to the diversity jurisdiction. See *Dragan v. Miller*, 679 F.2d 712 (7th Cir.1982). Yet a dispute between Metropolitan Life and Herbert Cammon, who was alive when suit was filed in 1988, is not a "probate" question. Carol Cammon had no claim to the proceeds of this policy. Her estate was never probated, which takes care of Herbert's contention that Carol's estate is an indispensable party.

■ Short work can be made of the merits, too. District judges are entitled to promote compliance with their orders by threatening dire consequences for disobedience. When disobedience persists, they are entitled to make good the threats. Otherwise the threats are hollow, and disobedience will increase. For some nine months Cammon provided few documents in response to Metropolitan Life's demands. Cammon's principal justification—that his criminal lawyer had what Metropolitan Life wanted—is frivolous. Cammon had only to ask his other lawyer for the materials, yet did not. On September 22, 1989, the district judge announced in open court, with Cammon present, that if the documents were not produced in 14 days the court would enter a default judgment. That deadline was October 6, 1989. No documents were produced by October 6, and the judge kept his word. He was entitled to do so. *Tolliver v. Northrop Corp.*, 786 F.2d 316 (7th Cir.1986); *Zuelzke Tool & Engineering Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226 (7th Cir.1991); *Lockhart v. Sullivan*, 925 F.2d 214 (7th Cir.1991).

On occasion we have set aside precipitate default judgments. E.g., *Del Carmen v. Emerson Electric Co.*, 908 F.2d 158 (7th Cir.1990) (collecting cases). The decision here was deliberative rather than highhanded. The judge discussed the degree and duration of Cammon's non-compliance and entered default judgment only after concluding that the most attractive alterna-

tive sanction—forbidding Cammon to deny at trial any of the facts covered by the discovery request—would be the functional equivalent of default. Thoughtful consideration of this kind is the antithesis of abuse of discretion. See *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). If Cammon had done his best to produce the documents and failed, perhaps because his criminal lawyer was holding the files under an attorney's lien, then default would have been inappropriate. But the criminal lawyer turned over copies of the documents promptly after request. Had Cammon asked his criminal lawyer on the day the judge set the two-week deadline, he would have been able to salvage his case. He did not ask. A joint declaration of Cammon and his latest lawyer (he ran through three in the district court) reveals that nothing happened until October 4, just two days before the deadline. No document was turned over to Metropolitan Life until October 10, when Cammon gave his adversary about 40 pages of documents that had been in the hands of his civil lawyers all along. At about the same time Cammon called his criminal lawyer and asked for other documents, which were obtained from a warehouse within the week and turned over in early November. The joint declaration sums up: "[b]etween October 10th and October 13th, substantial activity took place in regard to the completion of discovery". Indeed so. But the deadline was October 6, and the "substantial activity" could and should have occurred in January 1989, when Metropolitan Life made its request. Cammon blames his lawyers, but the consequences of their acts lie at his doorstep rather than his adversary's. *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

For a long time courts were reluctant to enter default judgments, and appellate courts were reluctant to sustain those that were entered. Courts emphasized that litigants are entitled to decisions on the merits, and that default is a harsh sanction. Those times are gone. *National Hockey League* told appellate judges to respect the district judge's choice of sanction. And district judges have become more aggressive in using their ultimate weapon to promote the efficient conduct of litigation. More power to them. *In re State Exchange Finance Co.,* 896 F.2d 1104, 1106 (7th Cir.1990) (collecting cases). Drawn-out litigation frustrates rather than promotes justice. Judges stretched thin by the flux of suits must do more with fewer hours per case. That means more reliance on the timetables and other rules that apply across the board, and less custom-tailoring. Cammon ignored these timetables, ignored them even after the judge announced a last-chance two week extension. He now pays the price.

AFFIRMED.