PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

ATHENA AUTOMOTIVE, INCORPORATED,
Plaintiff-Appellee,

v.

No. 98-1446

JOHN J. DIGREGORIO; J & D
AUTOMOTIVE, INCORPORATED,
Defendants-Appellants.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
J. Frederick Motz, Chief District Judge.
(CA-97-2556-MJG)

Argued: October 27, 1998

Decided: January 25, 1999

Before NIEMEYER and MICHAEL, Circuit Judges, and G. ROSS
ANDERSON, JR., United States District Judge for the District of
South Carolina, sitting by designation.

_____

Affirmed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Michael and Judge Anderson joined.

_____

COUNSEL

**ARGUED:** Jeffrey Warren Harab, LAW OFFICES OF JEFFREY W.
HARAB, P.C., Chevy Chase, Maryland, for Appellants. Stephen
Joseph O'Brien, O'BRIEN & LONG, Washington, D.C., for Appel-
lee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

For purposes of determining a federal court's subject matter jurisdiction based on diversity of citizenship, a corporation is considered to be a citizen of (1) the state of its incorporation and (2) the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The question of first impression presented by this appeal is whether a Georgia corporation, which had conducted business only in Maryland but had ceased those activities three years before commencement of this action, remained a Maryland citizen for purposes of diversity jurisdiction. We hold that at the time it commenced this action, the corporation was only a citizen of Georgia. Accordingly, we affirm the district court's ruling that complete diversity of citizenship existed in this corporation's suit against two Maryland citizens and remand for further proceedings.

I

Athena Automotive, Inc., a Georgia corporation, conducted an automobile repair business under the trade name "Brakes for Less" in Silver Spring, Maryland, until August 10, 1994, when it ceased all operations. The Silver Spring location was Athena Automotive's only place of business. Even though it ceased its business operations, Athena Automotive continued to maintain its corporate charter in good standing with the Georgia Secretary of State. Since 1994, however, Athena Automotive's only other activity has been to prosecute this litigation, which it commenced in August 1997. John T. Graham, a Virginia resident and a stockholder of Athena Automotive, has directed and continues to direct the corporation's litigation activities from his office in Fairfax, Virginia.

On August 8, 1997, Athena Automotive commenced this action in federal court in Maryland, naming as defendants John DiGregorio and J&D Automotive, Inc., a corporation owned by DiGregorio. DiGregorio is a Maryland resident, and J&D Automotive is a Maryland corporation with its principal place of business in Maryland. In the suit, Athena Automotive alleged that J&D breached its agreement to purchase the assets of Athena Automotive and that, through fraud, both

2

DiGregorio and J&D obtained and converted to their own use Athena Automotive's assets. Athena Automotive demanded $270,000 in compensatory damages and $1 million in punitive damages.

DiGregorio and J&D Automotive filed a motion to dismiss this action for lack of subject matter jurisdiction, contending that Athena Automotive remained a Maryland citizen for diversity jurisdiction purposes because it conducted its last business there. The district court denied the motion, reasoning that complete diversity existed because the three years that elapsed between Athena Automotive's last business activity in Maryland and the date it filed this action was "sufficient to shed [Athena Automotive] of its local character."

The district court granted permission to DiGregorio and J&D Automotive to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we did likewise.

II

Section 1332 of Title 28 confers subject matter jurisdiction upon federal courts over civil actions in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). In enacting this statute, Congress intended to "provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal court." S. Rep. No. 1830, at 5 (1958), reprinted in 1958 U.S.C.C.A.N. 3099, 3101-02.

Courts have consistently interpreted § 1332 and its predecessors to require complete diversity such that the state of citizenship of each plaintiff must be different from that of each defendant. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 492 (4th Cir. 1998). Because diversity jurisdiction depends on the citizenship status of the parties at the time an action commences, we must focus our jurisdictional inquiry solely on that time. See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991); see also Leimbach v. Allen, 976 F.2d 912, 917 (4th Cir. 1992); Mullins v. Beatrice Pocahontas Co., 489 F.2d

3

260, 261 (4th Cir. 1974). This conclusion is supported by the governing language of § 1332 which speaks in the present tense of civil actions where the matter in controversy "is between citizens of different States" and, in the case of a corporation, where the corporation "has its principal place of business." 28 U.S.C. § 1332(a)(1), (c)(1) (emphasis added). Because jurisdiction attaches at the commencement of an action, even if the citizenship of the parties changes after the commencement of the action so as to destroy complete diversity, subject matter jurisdiction is not destroyed, and the federal court continues to have authority to decide the case. See Freeport-McMoRan, 498 U.S. at 428.

With respect to the citizenship of a corporation for diversity purposes, § 1332 provides, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). To determine where a corporation has its principal place of business, we have recognized two tests, the "nerve center test" and the "place of operations test." See Peterson v. Cooley, 142 F.3d 181, 184 (4th Cir. 1998) (citing Mullins, 489 F.2d at 262). For instance, when a corporation engages primarily in the ownership and management of geographically diverse investment assets, we apply the "nerve center test," which establishes the corporation's principal place of business as that place where the corporation "makes the `home office,' or place where the corporation's officers direct, control, and coordinate its activities." Id. But when the corporation has "multiple centers of manufacturing, purchasing, or sales," we apply the "place of operations test," focusing on "the place where the bulk of corporate activity takes place." Id.

In the case before us, Athena Automotive maintained no place of business on August 8, 1997, the date it commenced this action. This appeal therefore presents the novel question of what the citizenship for diversity jurisdiction purposes of an inactive corporation is. Although we have not addressed this question until now, several other circuits have, each reaching a different conclusion.

The Second Circuit has concluded that an inactive corporation is a citizen of both the state of its incorporation and the state where "it last transacted business." Wm. Passalacqua Builders, Inc. v. Resnick

Developers South, Inc., 933 F.2d 131, 141 (2d Cir. 1991) (emphasis added). The court rested its conclusion on the presumption that a corporation must have a principal place of business for diversity jurisdiction purposes because even a defunct corporation could still be "local in character." Id. The Third Circuit, on the other hand, has concluded that an inactive corporation has no place of business and is therefore only a citizen of its state of incorporation. See Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995). And finally, the Fifth Circuit has reached a conclusion that falls somewhere between the other two holdings, rejecting a bright-line approach and adopting instead a facts-and-circumstances test. See Harris v. Block Clawson Co., 961 F.2d 547, 551 (5th Cir. 1992). The court concluded that a corporation which has been inactive "for a substantial period of time, in this case five years," is a citizen only where it is incorporated. Id. It did, however, state that if the corporation had not been inactive for a substantial period of time, the place of its last business activity would be relevant to, but not dispositive of, the determination of its principal place of business. Id.

Because we are required to view the corporation's citizenship for purposes of diversity jurisdiction at the time the action is commenced, we cannot categorically conclude that an inactive corporation is a citizen of its last place of business, as the Second Circuit concluded in Wm. Passalacqua, 933 F.2d at 141. On the other hand, to adopt a "bright-line" rule, as announced by the Third Circuit in Hansen, 48 F.3d at 696, that a corporation inactive at the commencement date of the litigation has no place of business and is therefore only a citizen of its state of incorporation could overlook the realities of a corporation's business activities and their geographical nexus, yielding a result demonstrably at odds with the statute.

A corporation's business does not usually end with the abruptness of closing its doors. Even when a corporation has ceased all operations and has become inactive, the continuing impact of its business in a given locale could linger on to an extent sufficient to give it a geographical identity there as its principal place of business. Indeed, a corporation's winding up of its business affairs may well constitute a significant activity and consume a considerable period of time.

These observations prompt us to emphasize that determinations of a corporation's principal place of business must be made on a case by

5

case basis. And a court must analyze the facts of each case to determine as of the date the action was commenced whether a corporation's business activity was sufficient to make it a citizen of the state of such activity.

III

With these principles in hand, we turn to the circumstances of Athena Automotive. From August 10, 1994, until August 8, 1997, when Athena Automotive commenced this action, its only activity was in Georgia, where it maintained its charter in good standing, and in Virginia, where its shareholder Graham was coordinating the corporation's litigation. Even though this litigation arose out of Athena Automotive's last business transactions in Maryland, between the time that all business activity in Maryland ended and the time this action commenced, almost three years had elapsed, and nothing further is shown to have happened in Maryland.

Prior to August 1994, Athena Automotive was effectively a local Maryland corporation. Its presence in Maryland at that time presumably eliminated any incentives of Maryland state courts to discriminate against it as an out-of-state citizen. But Athena Automotive did nothing in Maryland for approximately three years after August 1994. For practical purposes, at the time it commenced this action, Athena Automotive was an out-of-state corporation prosecuting an action in Maryland under the direction and effort of an out-of-state stockholder. Any local impact of its business had long dissipated. The fact that Athena Automotive's principal, indeed, only place of business was Maryland up until August 10, 1994, thus was of no consequence.

Accordingly, by taking a "facts and circumstances" approach similar to the one employed by the Fifth Circuit in Harris, we conclude that as of the date Athena Automotive filed suit against the defendants, it had become just the type of out-of-state citizen for whom Congress sought to provide a federal forum by creating diversity jurisdiction. See Harris, 961 F.2d at 551. Because complete diversity of citizenship existed between Athena Automotive as plaintiff and both DiGregorio and J&D Automotive as defendants and the amount alleged to be in controversy exceeds $75,000 exclusive of interest and

6

costs, we conclude that the district court has subject matter jurisdiction to hear this case.

While Athena Automotive was unquestionably a citizen of Georgia, its state of incorporation, see 28 U.S.C. § 1332(c)(1), whether it also actually had a place of business at the commencement of this action is not a matter that we need to decide, since it did not have its principal place of business in Maryland. Because the defendants were Maryland citizens and Athena Automotive was not a Maryland citizen and was at least a Georgia citizen, complete diversity therefore existed. If, however, we were required to find a principal place of business for applying § 1332, we might, by applying our "nerve center test," conclude that Athena Automotive's only business was to pursue this litigation, an activity that was being conducted from Fairfax, Virginia.

The order of the district court is accordingly affirmed, and this case is remanded for further proceedings.

AFFIRMED AND REMANDED

7