# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GARY DAVIS, an individual on
behalf of himself; GARY DAVIS, as
Private Attorney General and on
behalf of all others similarly
situated,
                 *Plaintiffs-Appellees,*

          v.

HSBC BANK NEVADA, N.A., a
national bank; HSBC FINANCE
CORPORATION, a Delaware
corporation; BEST BUY CO., INC., a
Minnesota corporation; BEST BUY
STORES, L.P., a Virginia limited
partnership,
                 *Defendants-Appellants.*

No. 08-57062

D.C. No.
2:08-CV-05692-
GHK-JC

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
February 9, 2009—Pasadena, California

Filed February 26, 2009

Before: Andrew J. Kleinfeld, Carlos T. Bea, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bea;
Concurrence by Judge Kleinfeld

**COUNSEL**

Stuart M. Richter and Gregory S. Korman, Katten Muchin Rosenman LLP; for the defendants-appellants.

Drew E. Pomerance and Erin M. LaBrache, Roxborough, Pomerance & Nye LLP; for the plaintiffs-appellees.

**OPINION**

BEA, Circuit Judge:

Defendants appeal the district court's order granting plaintiff Gary Davis's motion to remand Davis's putative class action to state court.[1] The only issue on appeal is whether Best Buy, a nationwide electronics retailer, has its principal place of business in the state of California. We reverse.

Plaintiff Gary Davis, as a private attorney general on behalf of himself and a putative class of similarly situated California consumers, sued HSBC Bank Nevada, N.A., HSBC Finance Corporation, Best Buy Company, and Best Buy Stores, L.P. in California Superior Court and alleged claims for unfair competition under Cal. Bus. & Prof. Code § 17200, false advertising under § 17500, and common law fraud in the nature of concealment. Davis's complaint alleges the defendants defrauded California customers by offering credit cards without adequately disclosing the annual fee the customers would be charged for use of the card.

---

[1]We have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1453(c)(1).

The defendants removed the action to federal district court and based on the Class Action Fairness Act of 2005 ("CAFA"). Davis filed a motion to remand the action to state court and contended that the local controversy exception, 28 U.S.C. § 1332 (d)(4),[2] barred the exercise of federal jurisdiction. The district court granted the motion to remand, and the defendants timely appealed.

The only issue on appeal is whether Best Buy Stores has its principal place of business in California. If not, Best Buy Stores is not a citizen of California, the local controversy exception does not apply, and federal jurisdiction under CAFA exists. We conclude Best Buy Stores does not have its principal place of business in California.

[1] A limited partnership or a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1). In this circuit, we apply two tests to determine the state of a corporation or partnership's principal place of business. First we apply the "place of operations" test. Under that test, a corporation's principal place of business is the state containing " 'a substantial predominance of corporate operations.' " *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 500 (9th Cir. 2001) (per curiam) (quoting *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990)). If no state contains a "substantial predominance" of corporate operations, we apply the "nerve center" test, which locates the corporation's principal place of business in

---

[2]The local controversy exception bars the exercise of federal jurisdiction when greater than two-thirds of the class members are citizens of the state in which the action was originally filed, the principal injuries about which the plaintiffs complain occurred in the state in which the action was originally filed, and at least one defendant, from whom significant relief is sought and whose conduct forms a significant basis for the claims asserted, is a citizen of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4).

the state where "the majority of its executive and administrative functions are performed." *Id.*

[2] Determining whether a "substantial predominance" of a corporation's operations take place in a given state "plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states."[3] *Id.* We employ a number of factors to determine if a given state contains a substantial predominance of corporate activity, including: "the location of employees, tangible property, production activities, sources of income, and where sales take place." *Id.* Substantial predominance does not require the majority of the corporation's operations to occur in a single state, but the corporation's activity in one state must be "substantially larger" than the corporation's activity in any other state. *Id.*

Applying this standard, the district court concluded Best Buy Stores had a "substantial predominance" of its activities in California. Best Buy Stores has more stores in California than in any other state, more employees in California than in any other state, and more sales in California than in any other state. As the district court explained, "California has 15% more stores, 40% more employees, and 46% more sales than Texas, the second highest state."

[3] The substantial predominance test does not require that a majority of corporate operations occur in a single state. But the test requires a "substantial" predominance, not mere predominance. In *Tosco*, for example, we held that a gasoline manufacturer and retailer was a citizen of California when 21% of its employees, nearly 50% of its refining capacity, half its lubricant blending facilities, 35% of its retail locations, 15% of its convenience stores, and 35% of its invento-

---

[3]Were we writing on a clean slate, we would find much in favor of the rule suggested by the concurrence. But we see ourselves as bound by the holding in *Tosco*.

ries were located in California. 236 F.3d at 501-02. In that case, the defendant also had management operations in California and, in previous litigation, had maintained that it was a citizen of California. *Id.* at 502-03. Tosco's operations reflected not only that it had more operations in California than in any other state, but that it had substantially more operations.

Accordingly, we have stated that when a corporation has operations spread across many states, the nerve center test is usually the correct approach. *Breitman v. May Co. Cal.*, 37 F.3d 562, 564 (9th Cir. 1994) ("May Company has corporate operations in over thirty states. Because no one state contains a substantial predominance of the corporation's business activities, the place of operations test inappropriate."). *Cf. Industrial Tectonics*, 912 F.3d at 1093 ("ITI's operations are divided between only two states: California and Michigan. ITI's operations are not so spread out that one must look to the corporate headquarters to find a principal place of business . . . ."). When a corporation's activities are spread over many states, it is much less likely operations in any one state will "substantially" predominate over operations in other states.

**[4]** We have not previously given precise definition to the meaning of the term "substantially" in the substantial predominance test. We do not here adopt any hard and fast rule or percentage by which the operations in one state must exceed those in other states. But in determining whether a corporation's operations "substantially" predominate, we must take into consideration both the nature of the corporation's business activities and the purposes of the corporate citizenship statute. The purpose of diversity jurisdiction, and the citizenship determinations associated with it, is to avoid the effects of prejudice against outsiders. *Industrial Tectonics*, 912 F.2d at 1094. Thus, the term "substantially" must be defined with an eye to ensuring that a corporation is a citizen of the place in which it is least likely to suffer prejudice. *See id.*

**[5]** It is clear that Best Buy Stores' California operations predominate over its operations in other states. But we cannot say that these operations "substantially" predominate over Best Buy Stores' operations in other states. Best Buy Stores is a nationwide retailer with stores in 49 states, the District of Columbia, and Puerto Rico. At most, the statistics demonstrate that Best Buy Stores' California retail activities roughly reflect California's larger population. If a corporation may be deemed a citizen of California on this basis, nearly every national retailer—no matter how far flung its operations—will be deemed a citizen of California for diversity purposes. Such a result is untenable. With operations distributed widely across the country, Best Buy Stores is no more familiar to Californians than it is to Texans or Illinoisans, and hence no less likely to suffer prejudice in California than elsewhere.[4]

**[6]** We do not require that courts apply a per capita approach to determining a corporation's principal place of business in every case. However, we hold that a nationwide retailer with operations spread across many states will be a citizen of California only when a substantial predominance of its activities are located in California; it will not be a citizen of California merely because its operations in California cater to California's larger population.

Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

REVERSED and REMANDED

---

[4]Indeed, both of these states have more Best Buy stores per capita than does California. Best Buy has fewer stores in California per person than it does on average nationwide.

KLEINFELD, J., writing separately:

I concur in the result. My reasoning is somewhat different.

The majority opinion extends *Tosco Corp. v. Communities for a Better Environment*[1] beyond its facts. In my view, *Tosco* was overwritten, and I would confine it to its facts. In *Tosco*, an oil company was suing an environmental advocacy group for defamation and related torts, and claimed to be a citizen of Connecticut in order to get diversity jurisdiction.[2] We affirmed a district court decision, which held that the oil company had its principal place of business in California, and adopted as our own the district court decision, rather than writing a decision independently.[3] The most striking fact in the case, more than the difference in percentage of refineries, gas stations and employees between one state and another, is that Tosco had itself successfully claimed in previous litigation that its principal place of business was California.[4] All that the district court and we had to decide in *Tosco* was whether some corporate changes in the three years between the two lawsuits changed the oil company's citizenship. The corporate changes did not amount to enough to change its citizenship. A district court decision often includes, quite properly, multiple reasons for affirmance, but an appellate decision has different purposes. We should have picked the best reason, that Tosco was still a citizen of the state where three years earlier it successfully claimed to be one. Since we did not, we must struggle with *Tosco* and follow it if it applies, but I think we could confine *Tosco* to its facts and distinguish it.

---

[1] 236 F.3d 495 (9th Cir. 2001) (per curiam).

[2] *Id.* at 497, 500.

[3] *Id.* at 497. *Compare id.* at 497-502 *with Tosco Corp. v. Cmtys. for a Better Env't*, 41 F. Supp. 2d 1061 (C.D. Cal. 1999).

[4] *Id.* at 502.

We held in *Industrial Tectonics, Inc. v. Aero Alloy* that the a corporation's "principal place of business" is "where a *majority* of a corporation's business activity takes place in one state."[5] *Tosco* says the opposite, that the "principal of business" "does not require the majority of a corporation's total business activities to be located in one single state, but instead, requires only that the amount of [the] corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business."[6] Without the per capita qualification the majority articulates, that means that the "principal place of business" of most national corporations would be in the most populous state, California. Even with it, this approach makes the wrong comparison, largest to next-largest state, instead of the right one, state to everywhere the business operates, to determine "principal place of business" by the "place of operations" test.

Comparing one state to another unreasonably lends itself to designating a "principal place of business" with the "place of operations" test when the "nerve center" test ought to be used. There is no reason why the burden of proof should be on the party urging use of the "nerve center" test, or why the "place of operations" test ought to be the default.[7] For a national corporation, the opposite presumption makes more sense. The Seventh Circuit uses only the "nerve center" test.[8] There can

---

[5]912 F.2d 1090, 1092 (9th Cir. 1990) (emphasis added); *see also Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1134-35 (9th Cir. 1997) (following the "majority" holding in *Industrial Tectonics*); *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 776 (9th Cir. 1992) (following the "majority" test from *Industrial Tectonics*).

[6]*Tosco*, 236 F.3d at 500.

[7]*See Tosco*, 236 F.3d at 499.

[8]*See, e.g.*, *Metro. Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991). The First, Second, and Fourth Circuits apply the nerve center test when a corporation's operations are decentralized and spread across multiple states. *See, e.g.*, *Diaz-Rodriguez v. Pep Boys Corp.*, 410 F.3d 56, 61 (1st Cir. 2005); *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290-91 (4th Cir. 1999); *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979).

only be *one* "principal place of business," and for a corporation that operates in multiple states "principal" does not merely mean the state with more of some activities than any other individual state. State-to-state comparison, as suggested in *Tosco* and followed by the majority, only assures identification of the state that has "substantially" more than the state it is compared to. Identification by this comparison of the state that substantially predominates for the *entire* corporation (which, as "principal" suggests, is what we are trying to identify) will have little to do with the correctness of the methodology, and more to do with fortuity. Rather than limiting application of what is plainly the wrong test for national corporations (the place of operations test), the majority opinion extends *Tosco*. This extension generates excessive unpredictability and encourages expensive litigation to identify the "principal place of business" for corporations that operate in multiple states. One great appeal of the nerve center test is that it is generally faster, more certain, and cheaper to apply than the place of operations test.

## FACTS

Plaintiff Gary Davis sued Best Buy and HSBC, the bank that issues the Best Buy credit card, in the Superior Court of the State of California. The complaint claims that Best Buy and HSBC defrauded their California customers by offering them credit cards without adequately disclosing the annual fee they would be charged. The case was brought as a class action, on behalf of all Californians who obtained the credit card and were charged a fee. The defendants removed the case to the United States district court pursuant to 28 U.S.C. § 1453(b),[9] a provision of the Class Action Fairness Act of 2005.[10]

---

[9]28 U.S.C. § 1453(b); *see Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006) (explaining the relationship between 28 U.S.C. § 1332(d) and § 1453(b)).

[10]Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified as amended in scattered sections of 28 U.S.C.).

All that matters on appeal is whether Best Buy is a citizen of the State of California. There are actually two Best Buy defendants in this case, a corporation that is a holding company, and a limited partnership that owns and operates the national chain of Best Buy retail stores. The parties do not put at issue the holding company's Minnesota citizenship. They dispute only whether the limited partnership is a citizen of California.[11] The limited partnership operates retail stores in 49 of the 50 states, plus Puerto Rico and the District of Columbia. The stores sell consumer electronics such as television sets and computers, video games, DVDs, cameras, and home appliances.

Generally, a company is a "citizen" of at most two states, the state of incorporation for corporations[12] or state of organization for unincorporated associations,[13] and the state where it has its "principal place of business."[14] Since Best Buy is organized under the laws of Virginia,[15] and is therefore a citi-

---

[11]Since only the citizenship of the limited partnership is at issue, "Best Buy" will be used to refer to the limited partnership, Best Buy Stores L.P., unless otherwise indicated.

[12]We do not consider corporations incorporated in multiple states or address whether such corporations are citizens of every state in which they have been incorporated. *See* Charles Alan Wright et al., 13B Federal Practice and Procedure § 3626 (2d ed. & Supp. 2008).

[13]28 U.S.C. § 1332(d)(10) ("For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.") The Best Buy limited partnership is organized under the laws of Virginia. For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes, and renders inapplicable the procedure in Federal Rule of Civil Procedure 23.2, which generally determines whether a federal court has subject matter jurisdiction over an action involving an unincorporated association. *See* Wright et al., *supra* note 12, at § 3630, at 667.

[14]*Id.* § 1332(c)(1) (providing that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

[15]*Cf.* § 1332(d)(10).

zen of Virginia, the only issue is whether its "principal place of business" is California.[16] The argument for California citizenship is basically that Best Buy operates more stores, employs more people, and sells more goods in California than in any other state. All of this is true. The argument against is basically that California is only a small part of Best Buy's national operations, sales, and workforce, and its national locus of decision making is in Minnesota. This is also true.

There can be only one "principal place of business" for diversity purposes, which of course is what the word "principal" implies.[17] Best Buy has about 11% of stores, 13% of sales and 13% of employees in California, compared with about 10% of stores, and 9% of both sales and employees in its next-most active state (Texas). This works out to be roughly 16% more stores, 45% more sales, and 45% more employees than Texas. Though its California business greatly exceeds its Texas business, Best Buy does 87% to 89% of its business and has all of its central management outside of California. "Principal," the statutory term, means principal for the corporation's entire business, not "more than any other single state."

## ANALYSIS

Under our precedents, we use the "place of operations" test

---

[16]We apply the same tests to determine the "principal place of business" for corporations and unincorporated associations. *See, e.g.*, *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002).

[17]Because we interpret the term "principal place of business," this holding applies to both corporations and unincorporated associations. *See* 28 U.S.C. § 1332(c)(1) & (d)(10) (providing that for the purposes of CAFA an unincorporated association "shall be deemed to be a citizen of the State where it has its principal place of business); *see, e.g.*, *Capitol Indem. Corp. v. Russellville Steel Co.*, 367 F.3d 831, 836-37 (8th Cir. 2004); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 161 (6th Cir. 1993); *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 406 (5th Cir. 1987); *cf. Breitman v. May Co. Cal.*, 37 F.3d 562, 564 (9th Cir. 1994).

to determine a corporation's "principal place of business" if (and only if) one state has a "substantial predominance" of the corporation's business activities.[18] If no state has a "substantial predominance" we use the "nerve center" test to determine that corporation's "principal place of business."[19] Our sister circuits generally apply some combination of the nerve center,[20] the "corporate activities" or place of operations,[21] and the "total activity" tests.[22] Despite varying verbal formulas,

---

[18]*Tosco Corp. v. Cmtys. for Better Env't*, 236 F.3d 495, 500 (9th Cir. 2001) (per curiam); *see also United Computer Sys.*, 298 F.3d at 763; *Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1134 (9th Cir. 1997); *Breitman*, 37 F.3d at 564.

[19]*See Tosco*, 236 F.3d at 500.

[20]The Seventh Circuit applies the nerve center test. *See, e.g.*, *Metro. Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991).

[21]The Third Circuit applies a variant of the place of operations test, which it calls the "center of corporate activities" or "operating assets" test. *See, e.g.*, *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 291 (3d Cir. 1998); *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 853-54 (3d Cir. 1960). It primarily looks for "the headquarters of day-to-day corporate activity and management." *See Mennen*, 147 F.3d at 291. The First, Second, and Fourth Circuits have adopted both the nerve center test and place of operations test. *See, e.g.*, *Diaz-Rodriguez v. Pep Boys Corp.*, 410 F.3d 56, 61 (1st Cir. 2005); *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290-91 (4th Cir. 1999); *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979); *see also Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 262 (4th Cir. 1974). Which test they apply depends on the structure of the corporation. *See, e.g.*, *Athena Auto.*, 166 F.3d at 290-91. They apply the nerve center test when corporate operations are decentralized and spread across a number of states. *See, e.g.*, *Diaz-Rodriguez*, 410 F.3d at 61. When a corporation has substantially all of its physical operations concentrated in one state, they apply the place of operations test. *See, e.g.*, *Peterson v. Cooley*, 142 F.3d 181, 184-85 (4th Cir. 1998).

[22]The total activities test incorporates both the nerve center and corporate activities test. Courts in the Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits apply this test. *See, e.g.*, *Capitol Indem.*, 367 F.3d at 835-36; *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 914-15 (10th Cir. 1993); *Gafford*, 997 F.2d at 162-63; *J.A. Olson*, 818 F.2d at 411-12; *Vareka Invs., N.V. v. Am. Inv. Props., Inc.*, 724 F.2d 907, 909-10 (11th Cir. 1984); *see also Assoc. Petroleum Producers, Inc. v. Treco 3 Rivers*

their approaches generally amount to about the same thing as *Industrial Tectonics*, *Tosco*, and this separate opinion.[23]

## I.  *Industrial Tectonics* and *Tosco*

In *Industrial Tectonics, Inc. v. Aero Alloy*,[24] the corporation's business activities were located in just two states, California and Michigan. We concluded that California was the corporation's principal place of business for the purpose of diversity jurisdiction, after noting that California accounted for 61% of sales, 69% of operating income, 64% of receivables, and the location of 75% of its inventory.[25] The California plant also had nearly double the book value of the corporation's only other plant in Michigan, and employed more than 50% of the corporation's employees.[26] Thus, by every measure, well over half of the corporation's business activities were in California. We held that "where a majority of a corporation's business takes place in one state, that state is the corporation's principal place of business, even if the corporate headquarters are located in a different state."[27] We

---

*Energy Corp.*, 692 F. Supp. 1070, 1074-75 (E.D. Mo. 1988). The total activities test considers factors such as the location of the corporation's "nerve center," administrative offices, production facilities, personnel, tangible property, sales, income earned, and balances these factors based on the facts of the case. *See, e.g.*, *Amoco Rocmount*, 7 F.3d at 915.

[23]*See Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 776 (9th Cir. 1992) (deriving the "general rule" that a corporation's principal place of business is the location of the "bulk of corporate activity, as evidenced by the location of daily operating and management activities"); *Indus. Tectonics*, 912 F.2d 1090, 1092 n.3 (9th Cir. 1990) (noting that the place of operations and nerve center tests "can be viewed as particular applications of a general rule that the 'bulk of corporate activity,' as evidenced by operating, administrative, and management activities, determines a corporation's principal place of business").

[24]912 F.2d 1090.

[25]*Id.* at 1094.

[26]*Id.*

[27]*Id.*

did not apply the nerve center test because California contained a substantial predominance of the corporation's business activities.[28] Our approach in *Industrial Tectonics* was consistent with our prior decisions, in which corporations with "substantially all" of their one (and only) business activity in a single state were found to have their "principal place of business" in that one state where all the operations were located.[29]

In *Tosco Corp. v. Communities for a Better Environment*[30] we held that the "place of operations" test determines a corporation's principal place of business "when a corporation conducts a substantial predominance of its business within a state."[31] The emphasis in *Tosco* on "substantial predominance," rather than "majority," as in *Industrial Tectonics*, arose because the corporation's business activities in *Tosco* were more complex than in *Industrial Tectonics*. According to the district court opinion we adopted, Tosco's refinery business had a majority of its refineries (63%), half of its lubricant blending and packaging facilities, and almost half (40%) of its refining capacity in California, but only about a third (37%) of its retail locations and inventory. California had more than twice the number of retail locations of any other state.[32] Thus, in *Tosco* we applied the "substantial predominance" inquiry mentioned but not used in *Industrial Tectonics* to analyze a corporation operating in more than two states, with the majority of its most important business factor (refineries, since Tosco was an oil company) and 50% of the important and refinery-related production facilities were in California. At least on the facts con-

---

[28]*Id.*

[29]*Bialac v. Harsh Bldg. Co.*, 463 F.2d 1185, 1186 (9th Cir. 1972); *see also New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1301 (9th Cir. 1989); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986).

[30]236 F.3d 495 (9th Cir. 2001) (per curiam).

[31]*Id.* at 497.

[32]*Id.* at 501.

sidered in *Tosco*, we concluded that a majority of each and every corporate activity was not required to establish a "substantial predominance."[33]

Neither *Industrial Tectonics* nor *Tosco* addressed companies with no majority of *any* activity in one state. Tosco was in the business of making and selling petroleum-based products, and Industrial Tectonics was in the business of making ball bearings. Both performed these activities largely in California, where the bulk of their production facilities were located. Best Buy does not conduct any of its activities largely in California. Though *Tosco* says, perhaps in dicta, that a majority of the corporation's *total* activities are not necessary (Tosco did in fact maintain a majority of its refineries in California), we have never said what "substantial predominance" requires when no state had a majority of *any* activity.

Under *Tosco* and *Industrial Tectonics*, application of the "place of operations" test[34] requires "substantial predominance" of the corporation's activities in one state.[35] "Substantial predominance" itself requires two things, both that activities in one state predominate, and also that this predominance be "substantial."[36]

---

[33]*Id.* at 500.

[34]Under the "place of operations" test, a corporation's principal place of business is the state with a "substantial predominance of corporate operations." *Indus. Tectonics*, 912 F.2d at 1092-93; *see also Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 776 (9th Cir. 1992); *Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 558 (9th Cir. 1987).

[35]*Tosco*, 236 F.3d at 502; *Indus. Tectonics*, 912 F.2d at 1094; *see also Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1134-35 (9th Cir. 1997).

[36]*Cf. Duncan v. Walker*, 533 U.S. 167, 174 (2001) (recognizing the duty to give effect, if possible, to every clause and word of a statute); *Exxon Corp. v. Hunt*, 475 U.S. 355, 369 n.14 (1986) (rejecting the reading of a phrase that made a latter phrase surplusage); *United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003) (recognizing the same canon of statutory construction).

## II.   Predominance

The term "predominance" invites arithmetic, but not merely arithmetic. Judgment is necessary to decide which numbers matter.

In this case, the district court considered that Best Buy generates most of its net sales, roughly 13%, in California and 9% of its net sales in Texas, the next-most productive state. Taking the difference, 4%, it calculated that California accounted for 45% more business than Texas. Based on the 45% difference between California (the highest[37] state) and Texas (the next-highest state), it concluded that California had a substantial predominance of Best Buy's sales. The court applied similar arithmetic, with similar results, to the number of Best Buy employees and stores in California. Based on these percentages of percentages, it concluded that California was Best Buy's principal place of business.

It is error to determine predominance merely by comparing one state to another. "Principal place of business" means principal place of business for the *entire* company. That may be the whole country for a nationwide business, and all of the states with its operations for a multi-state business. In the context of determining a corporation's "principal place of business," "predominance" should be judged against the corporation's entire operations, not merely by a comparison of the two highest states. For Best Buy, determining predominance requires comparing its California business to the other 48 states, Puerto Rico, and the District of Columbia.

A comparison between the two highest states cannot tell us whether the highest state has a "substantial predominance" because it tells us only how one state compares to another, not

---

[37]I use "highest" to mean the state with the most of that factor. Factors include number of employees, retail stores, inventory, sales, production facilities. *See Tosco*, 236 F.3d at 500-01.

whether any state so predominates that it is reasonable to call a multi-state company a citizen of that one state. If a retailer has operations in all the states proportional to population, and we determine "predominance" just by taking the difference between the two highest states, California would be the "principal place of business" for virtually every corporation because of its larger population. Because a comparison between the two highest states tells us nothing about whether the highest state predominates for the entire corporation (which is what matters), the comparison cannot tell us enough about "substantial predominance" to yield the principal place of business.

Determining "predominance" by comparing the operations in one state to the corporation's national operations is consistent with what the court actually did in *Tosco*, even though the words can be read to say we should do what the district court did in this case. In *Tosco*, we said that "substantially predominates . . . requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states."[38] We applied this verbal formulation by calculating what percentage of Tosco's total, national operations occurred in California.[39] It was based on this percentage of Tosco's *entire* operations that the district court found California to predominate and that predominance to be substantial.[40]

A hypothetical case illustrates why looking at the difference between states fails to determine the "principal place of business." Suppose a craft bourbon distillery, mostly discovered by tourists who arrange shipments home, ships 1 case of bourbon to each of the 50 states, except for Alaska, where a pair of tourists each ordered a case. The distillery sells twice as much bourbon to Alaska as to any other state, but Alaska only accounts for about 4% of its total sales. Although Alaska

---

[38]*Tosco*, 236 F.3d at 500.

[39]*Id.* at 501-02.

[40]*Id.*

greatly predominates when compared to any other individual state (2 cases to 1), it does not "predominate" in a relevant way, because 4% is not close to a majority of total sales. To say that Alaska is the "principal place of business" and "citizenship" of this distillery, when none of its employees have even taken a cruise there, and all of its manufacturing facilities and 96% of its sales occur elsewhere, would be a little silly. Yet under a state-by-state analysis, we would look only at the difference between the two highest states by subtracting the sales in the second-highest state (1 case) from the sales in Alaska (2 cases), and then dividing by the sales in the second-highest state (1 case). By this calculation 100% more sales occur in Alaska than any other state, so we would (erroneously) conclude that Alaska "substantially predominates" and is therefore the distillery's principal place of business and citizenship.

In order to calculate a useful percentage, one has to pick the numerator and denominator with a view towards what matters. Using the next-largest state as a denominator has only a slight bearing on what matters, substantial predominance of the business's entire operations. To determine whether operations in a state predominate, the proper numerator is business occurring in the state and the proper denominator is all the corporation's business.[41] Net sales, tangible property, personnel, production facilities, and other factors may be helpful for determining whether a state is the "principal place of business."[42] Whatever the indicia are, the point of looking at them is to determine what state, if any, predominates relative to every-

[41]Our precedents use the same numerator and denominator. This merely makes explicit the method for calculating a useful percentage. *See Tosco*, 236 F.3d at 500-01; *Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1135 (9th Cir. 1997); *Indus. Tectonics*, 912 F.2d at 1093-94.

[42]*See Indus. Tectonics*, 912 F.2d at 1094; *see also Montrose Chem.*, 117 F.3d at 1135 (examining the location of the corporation's tangible property, production activities, employees, and income sources).

where the corporation operates, not simply where the corporation has the most activities.

Thus, if a retail company has sales of $65 in California, $20 in Nevada, and $15 in Oregon, the relevant arithmetic is not ($65 — $20)/$20, which only tells us that 225% more sales occur in California than the next-largest state. It is $65/$100, which is California's percentage of $100, the company's *total* sales nationally ($65 + $20 + $15). Although both calculations tell us that California predominates in sales, only the latter provides a basis for concluding that California is the principal place of business because it is the only one that compares California's operations to the company's total operations in all states. The former calculation only shows how much more activity occurs in the highest state than the second-highest state, which tells us nothing about whether any state has a predominance of its national operations.

If this retail company also had operations in Washington, and its sales were $40 in California, $25 in Nevada, $20 in Oregon, and $15 in Washington, the first way (looking at the difference between states) yields the wrong answer. It shows a 60% "predominance" by California in total sales, while the correct calculation suggests California does *not* predominate as to sales, because it only accounts for 40% of total sales. The 60% figure, which corresponds to California's predominance over Nevada, is of little use in determining the "principal place of business" for this regional corporation.

To determine whether Best Buy's California operations "predominate," the relevant comparison is between the percentage of Best Buy's total operations in California and the percentage occurring elsewhere, not merely to the second-highest state (Texas). For factors such as sales, employees, and stores, the numerator is the amount of sales, number of employees, and number of stores in California. The corresponding denominators are the total sales, total number of

employees, and total number of stores for the entirety of Best Buy's operations.

As the majority says,[43] diversity jurisdiction enables citizens of non-forum states a better chance of avoiding "local prejudice." There is more to it, though, than avoiding the sort of prejudice Southerners might have had a half century or a century ago toward Yankees. Jurors may have no prejudice at all against citizens and corporations of other states, but still have a financial incentive to import their money. This incentive is especially strong when the corporate pockets are deep and the loss will not affect local employment. That may have been one of the reasons why Congress modified diversity jurisdiction in the Class Action Fairness Act.[44] Diversity protects against deep pocket justice as one form of prejudice.

## III.   Substantiality

Finding a state that predominates nationally does not suffice to establish the corporation's "principal place of business." The predominance, under *Industrial Tectonics* and *Tosco*, must also be "substantial."[45] "Substantial" does not mean just more than any other state. Like predominance, substantiality is judged by comparing the putative principal place of business to the rest of the corporation's activities.[46] The "totality of corporate activity," not just one or several compo-

---

[43]Op. at 2785.

[44]*See* S. Rep. No. 109-14, at 11-12 (2005) (Conf. Rep.) (noting that in section describing abuses of jurisdiction that "an important historical justification for diversity jurisdiction is the reassurance of fairness and competence that a federal court can supply to an out-of-state defendant facing suit in state court" and commenting on cases where the out-of-state defendant was confronted with "a state court system prone to produce gigantic awards against out-of-state corporate defendants" (alterations omitted)).

[45]*Tosco*, 236 F.3d at 500; *Indus. Tectonics*, 912 F.2d at 1094.

[46]*See Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959) (holding that a corporation's principal place of business "must be resolved on an over-all basis").

nents of that activity, must be substantial at the corporation's principal place of business.[47] Thus, in *Tosco* we held that the corporation's California operations were "substantial" because it had the majority of the corporation's most important activity, its refineries, and 50% of the important and related production facilities in California. In *Tosco* no other state had comparable percentages of the other factors considered — California had 40% of total refining capacity, and 37% of all retail locations.[48] Although California did not have a majority of every factor, California's predominance in *Tosco* was "substantial" because it had a majority of one of them, and the other factors' percentages were close to a majority and "significantly larger" than the percentages in any other state.[49]

There are four reasons why substantiality is essential for proper application of the "substantial predominance" test. First, if mere predominance sufficed, no matter how slight, then a corporation's principal place of business might change from year to year, or month to month, based on the routine vicissitudes of commerce. Second, requiring a finding of mere predominance, rather than *substantial* predominance, would make it likely that district and circuit courts in multiple circuits might locate a corporation's principal place of business in different states, even though each corporation can have only one.[50] Third, a simple predominance test would result in California being the "principal place of business" for nearly every national retailer by virtue of its larger population. Fourth, a "slight" predominance standard would just encourage expensive and fundamentally wasteful discovery, motions

---

[47]*Cf. id.*; *see also Indus. Tectonics*, 912 F.2d at 1094 (examining all business activities occurring in California).

[48]*Tosco*, 236 F.3d at 500-02.

[49]*Id.* at 500.

[50]*See* 28 U.S.C. § 1332(c)(1), (d)(10) (specifying that a corporation is a citizen of the state which is "its principal *place* of business" (emphasis added)).

practice, and appeals not even focused on whether or to what extent the defendant wronged the plaintiff, but instead on *where* a lawsuit about those matters ought to be conducted. Litigation is more than burdensome enough without adding a trial to decide where to have the trial.

The "substantiality" inquiry will not necessarily pinpoint a state in which a corporation's business activities substantially predominate so that it is the "principal place of business." The substantiality requirement should actually help identify when, despite a "predominance," the "place of operations" test is nevertheless inappropriate because the corporation's activities are not overwhelmingly concentrated in one place. As we explained in *Tosco*, predominance is not necessarily "substantial" if other states have comparable concentrations of the corporations' business activity.[51] Assuming a hypothetical business with 49% of its total activities in California, 46% in Nevada and 5% in Oregon has a "predominance" in California, we might still conclude that this predominance was not "substantial" because Nevada has a "comparable" percentage of the corporation's total activities and less than half of its activities are in California.[52]

To assess whether two states are "comparable," I would not depend on"per capita" analysis as the majority does. Dividing the amount of a business factor in a state by its population, or vice versa (and thus finding amount of sales "per person" or number of people "per store") at most identifies cases where the activity in a state is disproportionate to population. But disproportionateness on a per capita basis can arise for reasons having nothing to do with a state being the corporation's "principal place of business."

---

[51]*Tosco*, 236 F.3d at 500.

[52]*Id.* at 501-02 (examining whether other states had "comparable" concentrations of the corporation's entire operations when assessing substantial predominance).

Consider a hunting and fishing outfitter with 1 lodge in every state except Wyoming, where it has 2. "Per capita," then, Wyoming is the highest state with 1 lodge per 260,000 people. The next-highest state has 1 lodge per 620,000 people. On a per capita basis, the majority's state-to-state comparison leads to the conclusion that the outfitter's physical operations in Wyoming do "predominate" and that this predominance is "substantial." But just as it was for the bourbon distillery, this conclusion makes little sense. It is just silly to call Wyoming the "principal place of business" for a company when 96% of its employees have never set foot in Yellowstone, and 96% of its physical facilities and central reservation office are located elsewhere. A "per capita" analysis only tells us when a state has more or less of a given factor than other states. It does not tell us anything about what really matters, which is whether any state predominates for the entire corporation.

Many products appeal to specialized audiences, so that sales are disproportionately in a few states. For example, Porsches doubtless sell better to rich people, so richer states have disproportionately more Porsches, even with a per capita correction. Is Porsche's "principal place of business" California, Connecticut, or Washington D.C., just because more people in those places than in, say South Dakota or West Virginia, can afford Porsches? Because car battery blankets, oil pan heaters, and circulating heaters sell disproportionately in Fairbanks, is Alaska the principal place of business for the Outside companies that make them? Not by a sensible attribution of "citizenship."

Because the "place of operations" test is only appropriate for corporations that are truly concentrated in one place, courts should not struggle with mathematical gyrations to determine whether a predominance is "substantial." Where predominance is not substantial enough to be pellucid, the "nerve center" test applies.[53] Only if the "totality of corporate

---

[53]*Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959); *see also Tosco*, 236 F.3d at 500 (requiring the corpora-

activity in a given place . . . m[ay] be said to represent the 'center of gravity' of corporate function" is the substantiality requirement met.[54]

The "nerve center" test[55] determines a corporation's "principal place of business" by looking to "where its executive and administrative functions are performed."[56] "In short, courts generally assign greater importance to the corporate headquarters when no state is clearly the center of corporate activity, and assign greater importance to the location of corporate business when substantially all business operations take place in a single state."[57] In *Industrial Tectonics*, we held that because "a majority" of the corporation's business activity took place in one state, that state was its principal place of business, even though the corporate headquarters were located in a different state.[58] When no state has a substantial predominance of the corporation's total activities, we apply the nerve center test to determine the "principal place of business."

IV.  Best Buy

To determine if Best Buy has its principal place of business in California, we look at whether California contains a "substantial predominance" of Best Buy's business activities. Best Buy's business activities consist of its chain of Best Buy retail

---

tion's business activity in its principal place of business be "significantly larger" than its activities nationally); *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 776 (9th Cir. 1992) (concluding that the location of the "bulk" of a corporation's activities was its principal place of business).

[54]*Scot Typewriter*, 170 F. Supp. at 865.

[55]*Tosco*, 236 F.3d at 502; *Indus. Tectonics*, 912 F.2d at 1094; *see also Montrose Chem.*, 117 F.3d at 1134-35; *Scot Typewriter*, 170 F. Supp. at 865 (setting forth the "nerve center" test).

[56]*Indus. Tectonics*, 912 F.2d at 1092.

[57]*Id.* at 1093.

[58]*Id.* at 1094.

stores that sell movies, music, and electronics in 49 states, Puerto Rico, and the District of Columbia. There are a total of 923 retail stores distributed throughout these states and territories. These retail stores employ 126,837 people nationwide, and generated about $31.7 billion in net sales in 2008. To service these retail stores, Best Buy Stores owns or leases 9 distribution centers, which have 6.3 million square feet of space.

California has 103 of Best Buy's 923 total retail stores, or 11%. Of Best Buy's 126,873 employees, 16,033 (13%) are in California. Of its $31.7 billion in total sales, California accounts for $4.21 billion (13%).

Unlike in *Industrial Tectonics* and *Tosco*, Best Buy does not have a majority of any activity (employees, stores, etc.) concentrated in California. Instead, somewhere around 87% to 89% of Best Buy's total operations are *outside* of California, as is all of its national management. With far more than half of all activities occurring outside of California, I cannot conclude that Best Buy's California operations predominate, let alone "substantially" predominate. Were we to accept the district court's conclusion that Best Buy is a California citizen because it does more business there than in Texas, the Eighth Circuit and the district courts in Minnesota, where all of Best Buy's national management and administration take place, would rightly scoff.[59]

I do not get to comparisons of one state to another, as the majority does and we did in *Tosco*, because California does not have a predominance of any factor in Best Buy's total activities. Absent "predominance," there is no occasion to judge whether the (nonexistent) predominance is "substantial," which one might do by asking if states have "compara-

---

[59]*See, e.g.*, *Capitol Indem. Corp. v. Russellville Steel Co.*, 367 F.3d 831, 835-37 (8th Cir. 2004) (applying total activities test to determine the "principal place of business").

ble" percentages of the corporation's entire operations.[60] Finding two states that are "comparable" means any predominance is unlikely to be substantial.

Since there is no state in which Best Buy conducts a substantial predominance of its business activities, I would apply the nerve center test to determine its "principal place of business." Minnesota, the location of Best Buy's corporate headquarters, is thus its principal place of business. Best Buy is a citizen of Virginia, where it is organized, and Minnesota, where it is managed. A company only gets two citizenships, so it cannot have a third where it merely has more of some activity or activities than any other single state.

Though I concur in the result, I would confine *Tosco* to its facts, and clarify both the "place of operations" test itself and when it applies. Comparison of individual states generates expensive, unpredictable, and pointless litigation about corporate citizenship, likely to lead to intercircuit conflicts about where national business are citizens.

---

[60] *See Tosco*, 236 F.3d at 501-02.