**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | |
|---|---|
| CENTRAL WEST VIRGINIA ENERGY COMPANY, INCORPORATED, a West Virginia corporation; A.T. MASSEY COAL COMPANY, INCORPORATED, a Virginia corporation,<br><br>*Plaintiffs-Appellants,*<br><br>v.<br><br>MOUNTAIN STATE CARBON, LLC, a Delaware Limited Liability Company; SNA CARBON, LLC; SEVERSTAL WHEELING, INCORPORATED, a Delaware corporation; SEVERSTAL NORTH AMERICA, INCORPORATED, a Delaware corporation; OAO SEVERSTAL, a Russian Joint Stock Company,<br><br>*Defendants-Appellees.* | No. 10-1486 |

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Thomas E. Johnston, District Judge.
(5:09-cv-00467)

Argued: January 26, 2011

Decided: April 13, 2011

Before DUNCAN, DAVIS, and WYNN, Circuit Judges.

Reversed by published opinion. Judge Wynn wrote the opinion, in which Judge Duncan and Judge Davis concurred.

---

**COUNSEL**

**ARGUED:** Robert M. Stonestreet, DINSMORE & SHOHL, LLP, Charleston, West Virginia, for Appellants. Gregory J. Krock, BUCHANAN, INGERSOLL & ROONEY, PC, Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:** W. Henry Jernigan, Jr., David E. Rich, DINSMORE & SHOHL, LLP, Charleston, West Virginia, for Appellants. David B. Fawcett, BUCHANAN, INGERSOLL & ROONEY, PC, Pittsburgh, Pennsylvania, for Appellees.

---

**OPINION**

WYNN, Circuit Judge:

For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business. In *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010), the Supreme Court clarified that the phrase "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."

In this case, seven of Defendant Severstal Wheeling, Inc.'s eight officers, including its chief executive officer, chief operating officer, and chief financial officer, set corporate policies and oversee significant corporate decisions out of Dearborn, Michigan. Accordingly, under *Hertz*, Dearborn, Michigan is Severstal Wheeling's principal place of business. We therefore conclude that the district court erred in holding otherwise and reverse.

## I.

Plaintiff Central West Virginia Energy Co. ("Central Energy"), a West Virginia coal sales company, brought this suit in federal district court in April 2009. Central Energy filed an amended complaint, along with Plaintiff A.T. Massey Coal Company ("Massey Coal"), a Virginia corporation, in June 2009. Plaintiffs sued Mountain State Carbon, LLC ("Mountain State"), its member companies, one of which is Severstal Wheeling, and its parent companies, all of which are in the steel business. Plaintiffs alleged that Mountain State wrongfully refused to accept coal deliveries in breach of a coal supply agreement with Central Energy. According to the complaint, Mountain State's refusal of the coal was the result of an illegal scheme on the part of Mountain State and its affiliated companies to shift the costs of the 2008-2009 economic downturn onto Central Energy and Massey Coal.

Mountain State and Severstal Wheeling filed a motion to dismiss the complaint due to a lack of diversity, the basis of federal jurisdiction in this case. Specifically, Mountain State and Severstal Wheeling argued that Severstal Wheeling's principal place of business is in Wheeling, West Virginia. And because both Central Energy and Severstal Wheeling are West Virginia citizens, they contended, diversity jurisdiction did not exist. Central Energy and Massey Coal opposed the motion.

While the motion was pending, the United States Supreme Court issued a decision clarifying how federal courts are to determine principal place of business—*Hertz*, 130 S. Ct. 1811. On March 31, 2010, citing *Hertz*, the district court granted Mountain State's and Severstal Wheeling's motion and dismissed the complaint for lack of subject matter jurisdiction. In its memorandum opinion and order dismissing the case, the district court focused on the fact that Severstal Wheeling's self-described day-to-day operations such as "'purchasing, sales, transportation, engineering, human

resources, and accounting/financial functions' are all handled in Wheeling" and noted Severstal Wheeling's "visibility in and involvement with the Wheeling community." Central Energy and Massey Coal appealed.

## II.

Central Energy and Massey Coal argue that the district court erred in its application of *Hertz* when it determined that Severstal Wheeling's principal place of business was Wheeling, West Virginia, despite the fact that Severstal Wheeling's officers control the company's policies and high-level decisions from Dearborn, Michigan. We agree.

## A.

This case was brought in federal court on the basis of diversity jurisdiction. Under 28 U.S.C. § 1332, a federal district court has original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). With the exception of certain class actions,[1] Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). For purposes of diversity jurisdiction, the citizenship of a limited liability company (such as Mountain State) is determined by the citizenship of all of its members (such as Severstal Wheeling). *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004). Further, a corporation (such as Severstal Wheeling) "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

---

[1]*See* 28 U.S.C. § 1332(d), part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28, United States Code).

### B.

In the past, this Circuit has employed two tests to determine a corporation's principal place of business. *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). Under the first test, the "nerve center test," the home office from which the corporation's officers direct, control, and coordinate the corporation's activities is its principal place of business. *Id.* Under the second test, the "place of operations test," the place where the bulk of corporate activity occurs is the principal place of business. *Id.* Refusing to adopt either test to the exclusion of the other, the Fourth Circuit had held that the application of one test may be more appropriate than the other depending on the facts of a particular case. *Id.*; *see also*, *e.g.*, *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998).

With its recent *Hertz* decision, however, the Supreme Court made clear that, for purposes of diversity jurisdiction, a corporation's principal place of business is always its "nerve center." *Hertz*, 130 S. Ct. at 1186. The plaintiffs in *Hertz* were two California citizens who sued the Hertz car rental company in California state court on behalf of a putative class of California citizens. *Id.* Hertz removed the case to federal court on the basis of diversity, contending that its principal place of business was New Jersey, where it maintained its headquarters. *Id.* The district court looked at Hertz's business activities, found that a plurality of the business activities took place in California, and granted the plaintiffs' motion to remand to state court. The Ninth Circuit affirmed. *Friend v. Hertz Corp.*, 297 F. App'x 690 (9th Cir. 2008).

The Supreme Court rejected the lower courts' business activity reasoning. Instead, the Court focused on the location of the corporation's officers who direct, control, and coordinate the company's business and clarified that that location, the corporation's "nerve center," is, in all cases, the principal place of business. Thus, the Court unanimously stated:

In an effort to find a single, more uniform interpretation of the statutory phrase . . . [w]e conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

. . . .

We . . . recognize that the use of a "nerve center" test may in some cases produce results that seem to cut against the basic rationale for 28 U.S.C. § 1332, *see supra*, at 1188. For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the "principal place of business" is New York. One could argue that members of the public in New Jersey would be *less* likely to be prejudiced against the corporation than persons in New York—yet the corporation will still be entitled to remove a New Jersey state case to federal court. And note too that the same corporation would be unable to remove a New York state case to federal court, despite the New York public's presumed prejudice against the corporation.

We understand that such seeming anomalies will arise. However, in view of the necessity of having a

clearer rule, we must accept them. Accepting occa-
sionally counterintuitive results is the price the legal
system must pay to avoid overly complex jurisdic-
tional administration while producing the benefits
that accompany a more uniform legal system.

*Hertz*, 130 S. Ct. at 1192-94.

## C.

In this case, the record shows that the place where Severstal Wheeling's "officers direct, control, and coordinate the corporation's activities" is Dearborn, Michigan. *Hertz*, 130 S. Ct. at 1192. Seven of Severstal Wheeling's eight corporate officers—including its chief executive officer, chief operating officer, chief financial officer, and general counsel and secretary—all maintain their offices in Dearborn, Michigan. Only the eighth corporate officer, a vice president and general manager, maintains his office in Wheeling, West Virginia. Further, none of Severstal Wheeling's five directors is located in West Virginia, while two—the same men who also serve as the company's chief executive officer and chief financial officer—are in Dearborn, Michigan.

In its motion to dismiss, Severstal Wheeling conceded that its officers in Dearborn, Michigan "are responsible for significant oversight and strategic decision-making at Severstal Wheeling, but the day-to-day operations are conducted in Wheeling." Severstal Wheeling's Vice President and General Manager, Wilbur Winland, Jr., testified in his affidavit in support of the motion that the Dearborn, Michigan officers "are responsible for certain significant corporate decision-making at Severstal Wheeling, but not the day-to-day operations, which are performed in Wheeling." And Severstal Wheeling conceded in its briefing below that "Severstal Wheeling's officers and directors in Michigan are responsible for setting policy and overseeing significant corporate decisions," though they "do not conduct the corporation's day-to-day opera-

tions." With these statements, Severstal Wheeling concedes the very "direction and control" at the heart of the Supreme Court's "nerve center" discussion in *Hertz*.

Finally, in its corporate filings with the States of West Virginia, Ohio, and Michigan, Severstal Wheeling listed its Dearborn, Michigan address as its principal place of business.[2] While Severstal Wheeling notes that the Dearborn, Michigan address was prefaced by "c/o" followed by "William Wednieski, Severstal North America, Inc., 14661 Rotunda Drive, Dearborn, MI 48120," that preface does not change the fact that Severstal Wheeling told West Virginia, Ohio, and Michigan that its principal place of business was nowhere other than in Dearborn, Michigan. It is true that, under *Hertz*, merely filing a government form listing a principal place of business, without more, would be insufficient to establish a corporation's "nerve center." *Hertz*, 130 S. Ct. at 1195 ("[W]e reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"). Here, however, we are faced with much more than mere forms.

Severstal Wheeling did show that its "day-to-day operations," including purchasing materials, selling products, managing environmental compliance, and administering human resources matters such as payroll, are conducted in Wheeling. Severstal Wheeling also demonstrated, for example, that it has an employee credit union in Wheeling and is "active in the West Virginia business community and belongs to the West

---

[2]The district court noted other materials indicating otherwise—such as a newspaper article reporting that "[t]he downtown Wheeling headquarters will continue to be the home of SeverStal Wheeling, though some operations will be centralized in Dearborn . . . ." Such materials, however, do not convert Wheeling, West Virginia into "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz*, 130 S. Ct. at 1186.

Virginia Chamber of Commerce." What Severstal Wheeling fails to show, however, is how any of this is relevant to the "nerve center" test under *Hertz*.

Indeed, Severstal Wheeling's concession that its officers direct the company's high-level decisions from Dearborn, Michigan, while its day-to-day operations and public interface occur in West Virginia, underscores this case's similarity to the New Jersey/New York example that the Supreme Court provided in *Hertz*. The Court stated "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Hertz*, 130 S. Ct. at 1194. Here, if we supplant West Virginia for New Jersey and Michigan for New York, the *Hertz* hypothetical is this case.

In an attempt to preserve their victory, Mountain State and Severstal Wheeling argue that, under *Hertz*, a corporation's principal place of business is "where it directs its daily management activities." Yet neither the word "daily" nor the word "management" appears anywhere in *Hertz*. This is not surprising, given that the Supreme Court eschewed tests such as this Circuit's prior "place of operations" test—under which the locus of day-to-day activities would have been relevant—in an effort to find a simpler approach. *Id*. at 1186, 1191-92.

Mountain State and Severstal Wheeling also contend that various district courts applying *Hertz* have focused on the location of a corporation's headquarters, and not just of its officers, in determining the principal place of business. But the cases Mountain State and Severstal Wheeling cite—none of which has precedential weight—do not bolster their argument. In *Ebert v. Desco Corp.*, No. 5:10CV46, 2010 WL 2365486 (N.D. W. Va. June 28, 2010), the district court, with minimal recitation of facts or analysis, indicated that, among other things, the corporation at issue's operational and financial management was directed and controlled from the place

which the court decided was the principal place of business. Nothing in that unpublished district court decision, however, indicated that the corporation's officers or directors worked primarily elsewhere. *Id.*

In *Compass Bank v. Villarreal*, No. L-10-08, 2010 WL 1463483 (S.D. Tex. April 10, 2010), the district court determined that the plaintiff bank's principal place of business was where the plurality of its officers lived and worked, where several of the other executives also maintained offices, and where the vast majority of the bank's management committee meetings occurred. While the *Compass Bank* district court also noted that the location was home to the bank's administrative center and records, its focus on the bank's high-level executives hardly helps Mountain State's and Severstal Wheeling's cause. And in *Triple "S" Operating Co., LLC v. Ezpawn Oklahoma, Inc.*, No. 10-CV-0328-CVE-FHM, 2010 WL 2690376 (N.D. Okla. June 30, 2010), despite the fact that the defendant's retail stores were in Oklahoma, the district court determined that its principal place of business was in Texas, where its officers worked and directed the business. *Triple "S"*, which Mountain State and Severstal Wheeling cite for support, therefore cuts against their position.

Mountain State and Severstal Wheeling also suggest that Central Energy and Massey Coal are attempting to impute the citizenship of Severstal Wheeling's parent company to Severstal Wheeling. The district court, too, touched on this issue, stating, without explanation, that "placing the principal place of business of Severstal Wheeling in Michigan would ignore the reality that Severstal Wheeling is separate and distinct from its parent corporations, located in Michigan and Russia." We fail to understand this reasoning. It is undisputed that almost all of Severstal Wheeling's own officers work out of Dearborn, Michigan, as do some of its directors. That they may do so from a building owned by Severstal Wheeling's parent company is irrelevant. And the fact that they may also be engaged in affiliated companies' business activities is also

of no import. Moreover, we refuse any invitation to examine, for example, how much time Severstal Wheeling's officers devote to directing Severstal Wheeling's versus affiliated companies' business. Doing so would subvert the Supreme Court's guiding principle in *Hertz*—establishing a simple jurisdictional rule to avoid resource-intensive litigation. *Hertz*, 130 S. Ct. at 1193.

Finally, Mountain State and Severstal Wheeling contend that the district court focused on the correct evidence and properly concluded that direction and control actually emanate from West Virginia. The district court noted, for example, that employees in Wheeling, West Virginia "are engaged in nearly all facets of the company's operations" and that "managing the company's operations occur[s] in Wheeling." These determinations are fully supported by the record, and they may well have been salient, for example, under this Circuit's prior "place of operations test," which turned on "the place where the bulk of corporate activity takes place." *Peterson*, 142 F.3d at 184 (internal quotation marks omitted). But they are not germane to the "nerve center" test as laid out in *Hertz*. Moreover, focusing on such factors only resuscitates the very complexity that the Supreme Court sought to extinguish with *Hertz*.

## III.

In sum, the touchstone now for determining a corporation's principal place of business for diversity purposes is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz*, 130 S. Ct. at 1186.[3] Here, that is Dearborn, Michigan, where nearly all of

---

[3] We recognize that the proliferation of complex corporate structures among business enterprises may compel further attention to the issue of "principal place of business" under 28 U.S.C. § 1332. *Cf. Brewer v. Smith-Kline Beacham Corp.*, ___ F. Supp. 2d ___, 2011 WL 1103627 (E.D. Pa. Mar. 24, 2011) (finding principal place of business for multinational holding company with sole membership in LLC was headquarters of LLC, and not location of holding company's high level officers). But in this case, it is clear—*Hertz* controls, and Severstal Wheeling's nerve center is in Dearborn, Michigan.

the high-level officers work, make significant corporate decisions, and set corporate policy. The district court erred in holding otherwise, and we accordingly reverse.

*REVERSED*