**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1061**

PASSPORT HEALTH, LLC,

        Plaintiff − Appellant,

    v.

AVANCE HEALTH SYSTEM, INC.,

        Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, Chief District Judge.  (5:17-cv-00187-BO)

Submitted:  March 20, 2020                    Decided:  August 13, 2020
Amended:  August 17, 2020

Before DIAZ and FLOYD, Circuit Judges, and Rossie D. ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Floyd and Judge Alston joined.

Edward A. Pennington, Darlene K. Tzou, SMITH GAMBRELL & RUSSELL, LLP, Washington, D.C., for Appellant.  Anthony J. Biller, Emily M. Haas, James R. Lawrence, MICHAEL BEST & FRIEDRICH LLP, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Passport Health, LLC appeals from the district court's grant of summary judgment to Avance Health System, Inc. on Passport's federal trademark infringement and passing-off claims and its North Carolina unfair and deceptive trade practices and unfair competition claims. The claims stem from Avance's use of Passport's federally registered "PASSPORT HEALTH" trademarks as a search term on an internet search engine and in an advertisement on the search results page. Passport also contends that the district court erred in not exercising diversity jurisdiction over Passport's breach of contract claim. Because we find no likelihood of confusion from Avance's use of Passport's trademarks, and because Passport failed to carry its burden of establishing diversity jurisdiction, we affirm.

I.

Passport provides travel-related health care services, such as vaccines and consultations on health risks and safety precautions. Through its franchisees, Passport provides services in over forty states under its three federally registered "PASSPORT HEALTH" trademarks.[1] Passport has used its marks for over twenty-three years.

---

[1] The three trademarks are each for "PASSPORT HEALTH," but they fall under different classes of services. The trademarks consist of standard characters and make no claim to any particular font, style, size, or color.

Avance provides back-office support, including accounting, records management, and marketing and advertising support, to Avance Care, P.A. ("Care"). Care provides a wide variety of primary health care services, including travel-related services, at ten locations in North Carolina.[2]

In 2008, Avance hired an internet marketing company, Atlantic Business Technologies ("ABT"), to advertise its website. As part of its services, ABT purchased AdWords from internet search engines. An AdWord is a search term that, when entered into a search engine, generates an advertisement for the purchaser alongside the search results. The non-advertisement search results are the "natural" results. The text in the resulting advertisement is either written by the purchaser or, if the purchaser opts for "dynamic" results, is automatically generated by the search engine.

To purchase an AdWord in the search engine Bing, for example, advertisers place bids on a search term based on how much they are willing to pay per click on the resulting advertisement. The highest bidders receive preferred advertisement locations on the search results page, and they pay the search engine per click. Bidding on the search term is ongoing, so advertisers must maintain competitive bid amounts. *See* FAQ, https://ads.microsoft.com/ (last visited July 29, 2020).

---

[2] Passport contends that both Avance and Care provide health care services. Whether Avance also provides health care services is not a material fact in this case.

In 2011, ABT began bidding on the AdWord "passport health" in Google and Bing to promote Care's services. Avance wasn't involved in selecting, approving, or monitoring the AdWords that ABT purchased on its behalf.

In early 2013, Passport sent Avance a cease-and-desist letter alleging that Avance was infringing on Passport's trademarks by purchasing the "passport health" AdWord and by using it in the resulting advertisement. In response to the letter, ABT admitted to Avance that it was bidding on the AdWord but that its "ads do not mention Passport Health at all." J.A. 456. It provided Avance the text of the advertisements as proof."[3] It also stated that purchasing AdWords containing the names of other companies was an accepted marketing practice. ABT offered to pause bidding on the "passport health" AdWord, but Avance instructed it to "proceed without making any changes." *Id.*

Passport then sued Avance for trademark infringement. At that point, Avance instructed ABT to stop all unauthorized use of "passport health." In a letter to Passport, Avance stated:

> Avance Health System has ceased all unauthorized use of Passport Health's trademark as of February 21, 2013. We are no longer bidding on Passport Health keywords in Google or Bing as of February 21, 2013. We will not bid on these keywords in the future. We hope that this resolves your concerns of trademark infringement.[4]

---

[3] According to ABT, the first advertisement read, "Vaccination Clinic Walk-Ins Welcome & Same Day Appts Available! Find a Local Clinic. www.AvanceCare.com/Vaccines." *Id.* The second read, "Travel Vaccinations Evening & Weekend Appointments. Find a Local Clinic Near You! www.AvanceCare.com/Travel_Vaccines." *Id.*

[4] "Keyword" is another term for an AdWord.

4

J.A. 53. Passport voluntarily dismissed the suit.

In December 2013, Avance hired Hummingbird Creative Group to conduct its internet advertising. Avance later replaced Hummingbird with TheeDesign, another internet marketing company. Hummingbird and TheeDesign each took over the AdWord bidding campaigns that were already in place in Google and Bing. Avance didn't review or otherwise manage the AdWords that Hummingbird or TheeDesign purchased. It also didn't write or review the text that appeared in the resulting advertisements.

In early 2017, Passport discovered that Avance had continued bidding on the "passport health" AdWord in Bing. Passport learned this by looking at Bing's archived data from 2014 to 2017, which showed that a search for "passport health" generated results showing (as depicted below) Passport's website as the first natural search result as well as an advertisement for Avance. The Avance advertisement was to the right of the natural results and labeled as an "Ad." It read, "Passport Health Clinic – Serving the Triangle Metro Area in NC www.AvanceCare.com":



PLAINTIFF'S EXHIBIT 13 6-23-17 MMJ

J.A. 107.

Passport then brought the present suit, which alerted Avance to the Bing search results. TheeDesign reviewed Avance's AdWord campaigns (of which there were 3,634 in Bing alone) and confirmed that a campaign for "passport health" remained active in Bing but that the campaign in Google had ended in 2013. The record is silent as to why the Bing campaign continued after Avance instructed ABT to stop it.

Data from Bing shows that from 2014 to 2017 (when the campaign was in fact stopped), the advertisement resulting from the campaign generated forty-one clicks, seven of which occurred in the same month this suit was filed.

In the present suit, Passport asserts claims of trademark infringement, in violation of 15 U.S.C. § 1114; passing off, in violation of 15 U.S.C. § 1125(a); unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1; and North Carolina common law unfair competition and breach of contract. Passport bases its claims on Avance's purchase of the "passport health" AdWord as well as on the appearance of "Passport Health" in the text of the resulting advertisement.

Passport moved for summary judgment on the three statutory claims, and Avance cross-moved on all claims. The district court granted summary judgment to Avance on Passport's claims of trademark infringement, passing off, unfair and deceptive trade practices, and unfair competition, concluding that Avance's use of Passport's trademarks didn't create a likelihood of confusion. The court said nothing about diversity jurisdiction and declined to exercise supplemental jurisdiction over Passport's breach of contract claim.[5]

This appeal followed.

## II.

Passport contends that (1) there is a genuine dispute of material fact as to whether Avance's use of its trademarks created a likelihood of confusion and (2) the district court

---

[5] Though the district court declined to exercise supplemental jurisdiction over the remaining breach of contract claim, it necessarily did so over the North Carolina unfair and deceptive trade practices and unfair competition claims. Neither party challenges this decision.

7

erred in not finding diversity jurisdiction over the breach of contract claim. We take up the question of likelihood of confusion first.

A.

Two preliminary issues require our attention. First, Passport's claims are based on Avance's purchase of the "passport health" AdWord as well as on the appearance of "Passport Health" in the resulting advertisement. As to the purchase of the AdWord, the district court concluded that "Passport has failed to identify any decision which has held that the mere purchase of an AdWord from a search engine constitutes trademark infringement, and the Court is unpersuaded to hold so here." J.A. 661.

On appeal, Passport only addresses this issue briefly. It asserts that "Avance's use of PASSPORT HEALTH as a keyword, and as text in a sponsored ad, creates a likelihood of confusion." Appellant's Br. at 9. And it devotes one page of its brief to arguing that no cases have resolved this issue at the summary judgment stage. Even in that argument, it focuses on the fact that "the keywords PASSPORT HEALTH appear in the sponsored link." *Id.* at 28.

We conclude that Passport has failed to develop an argument that Avance's purchase of the "passport health" AdWord alone creates a likelihood of confusion, so we don't address that issue here. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)). We instead focus our analysis on the appearance of "Passport Health" in Avance's advertisement.

8

Second, Avance argues that Passport's federal trademark infringement and passing-off claims must fail because Passport didn't plead or prove that Avance is either a direct or an indirect infringer. A direct infringer is a party "who actually mislabel[s] goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982). Liability for trademark infringement also extends to indirect infringers, which are parties who "facilitate or encourage infringement," "have an apparent or actual partnership" with a direct infringer, or have joint authority with a direct infringer "to bind one another in transactions with third parties" or to "exercise joint ownership or control over the infringing product." *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163, 165 (4th Cir. 2012); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806–08 (9th Cir. 2007) (referring to these infringers as "secondary" infringers).

Avance contends that it isn't a direct infringer because it wasn't involved in writing or reviewing the text of its online advertisements. And it asserts that Passport failed to allege or prove that it's an indirect infringer. The district court didn't address these arguments, instead granting summary judgment to Avance on the ground that the advertisement didn't create a likelihood of confusion and thus that there was no underlying infringement. Because we too find no likelihood of confusion, we resolve Passport's claims on that ground, to which we turn now.

B.

We review the district court's grant of summary judgment to Avance de novo. *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007). "Summary judgment is appropriate only if the movant shows that there is no genuine

9

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *L-3 Commc'ns Corp. v. Serco, Inc.*, 925 F.3d 85, 90 (4th Cir. 2019) (cleaned up). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (cleaned up).

Passport's claims of trademark infringement, passing off, unfair and deceptive trade practices, and unfair competition all require a showing that Avance's use of Passport's trademarks creates a likelihood of confusion. *See* 15 U.S.C. § 1125(a)(1) (passing-off claims); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018) (trademark infringement claims); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (North Carolina unfair and deceptive trade practices and common law unfair competition claims).

In some cases, a plaintiff is entitled to a presumption of a likelihood of confusion. *See Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 110 F.3d 234, 239 (4th Cir. 1997). This presumption arises "when the copier intends to exploit the good will created by an already registered trademark." *Id.* (cleaned up).

Otherwise, to determine whether a likelihood of confusion exists, we examine nine factors:

(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;

(2) the similarity of the two marks to consumers;

(3) the similarity of the goods or services that the marks identify;

(4) the similarity of the facilities used by the holder of the marks;

10

(5) the similarity of advertising used by the holder of the marks;

(6) the defendant's intent;

(7) actual confusion;

(8) the quality of the defendant's product; and

(9) the sophistication of the consuming public.

*Variety Stores*, 888 F.3d at 660. "Not all of these factors will be relevant in every trademark dispute, and there is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006).

## C.

Here, the district court first rejected Passport's contention that it was entitled to a presumption of a likelihood of confusion. We agree. As discussed in greater detail below, there's no evidence that the appearance of "Passport Health" in the advertisement was done with intent to exploit Passport's good will. Rather, in 2013, Avance instructed ABT to stop bidding on "passport health," and it's unclear why the "passport health" AdWord campaign continued thereafter. In addition, there's no evidence that Avance or its internet marketing companies ever intended the resulting advertisement to contain "Passport Health."

Turning to the likelihood-of-confusion factors, the district court concluded that there were no genuine disputes as to the strength of Passport's marks, the similarity of Passport's marks and the marks as used by Avance, the similarity of Passport's and Avance's services, Avance's intent, and the existence of actual confusion. Because the court also concluded

11

that all of those factors except the similarity of services weighed against a likelihood of confusion, it held that Avance was entitled to summary judgment.

For the reasons that follow, we agree that there's no likelihood of confusion and thus affirm the district court's grant of summary judgment to Avance. We focus our analysis on the same factors as the district court, as the remaining factors aren't relevant here.[6]

1.

In determining the strength of a mark, we consider both its conceptual and commercial strength. *Variety Stores*, 888 F.3d at 661. To evaluate a mark's conceptual strength, we categorize it into one of four groups—generic, descriptive, suggestive, or arbitrary or fanciful. *Id.* Generic marks are the least conceptually strong, and arbitrary or fanciful marks are the most so. *See id.* at 661–62. "Descriptive marks—such as '5 Minute glue' or 'After Tan post-tanning lotion'—merely describe a function, use, characteristic, size, or intended purpose of the product," while "[s]uggestive marks—such as 'Orange Crush®'—merely suggest a product's features and require some imagination on the part of the consumer." *Id.* (cleaned up). A suggestive mark may be conceptually weak if third parties frequently use it, particularly if they do so in the same field of service. *Id.* at 662–

---

[6] The similarity of Passport's and Avance's facilities is irrelevant in this dispute over an online advertisement. Regarding the parties' advertising and the quality of Avance's services, neither party presents any argument on these factors, so we conclude that they too are irrelevant. And as to consumer sophistication, "this factor will only be relevant when the relevant market is not the public at-large." *George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009) (cleaned up). The market here is the general public, rendering this factor irrelevant as well.

63 (concluding that a suggestive mark was conceptually weak because over 500 third parties used one element of it).

To evaluate a mark's commercial strength, we consider the owner's "advertising expenditures," "consumer studies linking the mark to a source," "sales success," "unsolicited media coverage of the product," "attempts to plagiarize the mark," and "the length and exclusivity of the mark's use." *Id.* at 663 (cleaned up). Third-party use also undermines a mark's commercial strength. *Id.*

Passport contends that its marks are conceptually strong because they're suggestive. In support, it asserts that consumers must use some imagination to connect "passport health" to travel vaccines. Passport also contends that its twenty-three-year use of the marks and Avance's purchase of the "passport health" AdWord indicate that the marks are commercially strong.[7]

Avance counters that Passport's marks are conceptually and commercially weak because third parties that provide health care services use "passport" in their registered and unregistered marks. In support, Avance points to the U.S. Patent and Trademark Office's ("USPTO") records of trademark applications and registrations. Of marks categorized under "medical services," twenty-seven contain "passport" (three of which belong to

---

[7] Passport also asserts that its marks are commercially strong because it "invested substantial resources to be a strong and valuable brand identity" and "consumers have come to associate PASSPORT HEALTH with a high quality of services and recognize[] the mark as a distinctive indicator of source." Appellant's Br. at 22. These conclusory allegations cannot demonstrate a genuine issue of material fact. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Passport). J.A. 149. One mark, "PASSPORT FOR HEALTH," is registered in relation to "[h]ealthcare and medical tourism services." J.A. 150. Of marks categorized under "goods and/or services related to travel," sixty-three contain "passport" (three of which belong to Passport). J.A. 150–51. In addition, a third party uses the website "www.passporthealth.com," and another uses the unregistered mark "Passport Health Plan." J.A. 152. Finally, three other third parties have purchased the "passport health" AdWord.[8]

Before the district court, Passport didn't contend that its marks are conceptually and commercially strong. Instead, it argued that the marks were entitled to a presumption of strength because they're incontestable. "[A] mark may become incontestable after five years of continuous and unchallenged use, if such use has been averred to in an affidavit filed with the [USPTO] within one year after the five-year period." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). The district court properly rejected this argument, as incontestability alone doesn't establish a mark's strength. *See id.* at 934–35.

Passport isn't limited to the argument it made before the district court. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise

---

[8] Passport objects to Avance's evidence of third-party use on a number of grounds. Because Passport didn't raise any of its objections before the district court, we don't consider them here. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004) ("Absent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal.").

arguments they made below."). Nonetheless, we decline to resolve whether Passport's new arguments create a genuine dispute as to its marks' conceptual and commercial strength because even if so, the remaining factors don't support a likelihood of confusion.

2.

Turning to the similarity of the marks, we recognize that Avance's advertisement contains the exact text of Passport's marks. But this doesn't end our analysis; "[i]n testing for similarity, we must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer." *Grayson O Co.*, 856 F.3d at 317 (cleaned up).

Here, the parties dispute the proper context for our analysis. Passport contends that we must assess only Avance's advertisement and the information that surrounds it on the search results page. Because the headline of the advertisement contains Passport's exact marks and the information identifying Avance is in smaller text, Passport asserts that the similarity of the marks creates a likelihood of confusion.

Avance counters that we must also consider the website to which its advertisement links. Limiting our assessment to the search results page would, Avance argues, amount to applying the "initial interest confusion" doctrine, which we declined to adopt in *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005). That doctrine holds a competitor liable under trademark law if the competitor "lur[es] potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated." *Id.* at 315–16 (cleaned up). Because Avance's advertisement takes consumers to Avance's website

15

and not Passport's, Avance contends that any confusion from the appearance of Passport's marks is ultimately dispelled.

We agree that *Lamparello* dictates that the proper context here includes Avance's website. *Lamparello* arose out of the plaintiff's use of the website domain name "www.fallwell.com" for his "gripe website," which was critical of Reverend Jerry Falwell. *Id.* at 311. Falwell, who holds trademarks for "Jerry Falwell" and "Falwell," alleged that Lamparello's website domain name infringed his marks. *Id.* at 311–12. Falwell urged us to apply the initial interest confusion doctrine and contended that it required us "to compare his mark with Lamparello's website domain name . . . *without* considering the content of Lamparello's website." *Id.* at 316. He argued that he should prevail under the doctrine because "some people who misspell his name may go to www.fallwell.com assuming it is his site, thus giving Lamparello an unearned audience—albeit one that quickly disappears when it realizes it has not reached Reverend Falwell's site." *Id.*

We rejected this argument, stating that "we have never adopted the initial interest confusion theory; rather, we have followed a very different mode of analysis, requiring courts to determine whether a likelihood of confusion exists by examining the allegedly infringing use *in the context in which it is seen by the ordinary consumer.*" *Id.* (cleaned up). Put differently, under our analysis, "a court should not consider how closely a *fragment* of a given use duplicates the trademark, but must instead consider *whether the use in its entirety creates a likelihood of confusion.*" *Id.* (cleaned up). And "[w]hen dealing with domain names, this means a court must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name." *Id.*

16

Here, by urging us to only consider the appearance of Avance's advertisement on the search results page, Passport makes essentially the same argument as Falwell. Like Falwell, Passport focuses on whether the use of its marks will lure consumers to its competitor's website, regardless of whether the content of the website will dispel the consumers' confusion. Thus, though Passport never references the initial interest confusion doctrine, its argument relies on it. As in *Lamparello*, we decline to adopt the doctrine here. As such, we consider Avance's advertisement in conjunction with the website to which it links.

This approach is consistent with our analysis in *Rosetta Stone Ltd. v. Google, Inc.*, where we considered Rosetta Stone's claim that Google's AdWord policy infringed its trademark. *See* 676 F.3d at 152. Google's policy allowed third parties to use Rosetta Stone's mark as an AdWord and (under certain circumstances) in the resulting advertisements. *Id.* at 151–52. In *Rosetta Stone*, we didn't consider the similarity of Rosetta Stone's mark and the mark as used by Google, explaining that the similarity of the marks is of limited value where nominative fair use is asserted as a defense to trademark infringement, *id.* at 154–55. Nominative fair use refers to scenarios in which "the defendant is not passing off its products under the plaintiff's mark but rather is using plaintiff's mark to refer to plaintiff's own products."[9] *Id.* at 155. Here, Avance hasn't

---

[9] An example is an automobile repair shop specializing in foreign vehicles that runs an advertisement using the trademarked names of the vehicles to highlight the kinds of cars it repairs. *Id.* at 154.

17

asserted a nominative fair use defense, so *Rosetta Stone*'s analysis on the similarity of the marks doesn't apply.

In analyzing actual confusion in *Rosetta Stone*, we considered evidence of consumers who were confused by the search results page alone. *Id.* at 158–59. But we don't think this aspect of *Rosetta Stone* supports Passport's contention that we must limit our analysis to the search results page here. In fact, in *Rosetta Stone*, we also considered evidence of consumers who remained confused after they reached the third party's website and then received the third party's product. *Id.* at 156–57. And because the confusion persisted after consumers left the search results page, *Rosetta Stone* didn't present the initial interest confusion doctrine question that we confront here.

In sum, evidence of confusion at the search results page alone was relevant in *Rosetta Stone*, where the confusion also persisted beyond the search results page. But that isn't the case here, where considering only the search results page would amount to adopting the initial interest confusion doctrine.

Turning then to Avance's website, any confusion from Avance's use of Passport's marks in its advertisement is dispelled when consumers reach the website. The website's domain name is "www.avancecare.com," it features the "Avance Care" mark at the top of every page, and it doesn't mention "passport health." J.A. 233–34. The home page also doesn't mention travel health services, and once a consumer reaches the travel health services page, it too bears the "Avance Care" mark and doesn't mention "passport health." No reasonable juror could conclude that consumers would be confused as to whether Passport provides the services described on the website or is affiliated with them. Thus,

18

there's no genuine dispute as to the similarity of Passport's marks and Avance's use of the marks in its entirety, and this factor weighs in Avance's favor.

3.

As to the similarity of the services the marks identify, the district court concluded that this factor weighs in Passport's favor because both Passport and Avance offer travel vaccines and related medical services. Neither party challenges this conclusion, and we agree with the district court.

4.

This brings us to Avance's intent. "If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion." *Variety Stores*, 888 F.3d at 665 (cleaned up).

Passport asserts that Avance intended to confuse consumers with its advertisement. Passport notes that ABT admitted to purchasing the AdWord "passport health" and that Avance instructed it to continue doing so. Passport argues that "[b]y proactively and deliberately selecting 'PASSPORT HEALTH LOCATIONS' as part of the Passport Health ad campaign, Avance obviously intended to capitalize on, and redirect to Avance's own facilities" Passport's customers. Appellant's Br. at 26. Passport also notes that in February 2013, it alerted Avance to the AdWord campaign and an advertisement containing its marks, but Avance continued to run the campaign.

Avance denies any intent to confuse. It notes that it didn't design or manage its online advertisements and that following Passport's first suit in 2013, it instructed ABT to stop all unauthorized use of "passport health."

19

We conclude that there's no genuine dispute as to Avance's intent. After Passport brought suit in 2013, Avance instructed ABT to stop the "passport health" AdWord campaigns (and, necessarily, the resulting advertisements), and ABT in fact terminated the Google campaign. Avance's instruction, along with ABT's effort to follow it, dispels any inference of intent to confuse arising from ABT's initial purchase of the "passport health" AdWord. The record is silent as to why the Bing campaign continued or why the resulting advertisement contained "Passport Health." But there is no evidence that Avance, ABT, or the subsequent internet marketing companies ever intended the resulting advertisement to contain "Passport Health."

On these facts, no reasonable juror could conclude that Avance or its internet marketing companies intended the advertisement at issue to continue after 2013, let alone to confuse consumers.

5.

Next, we consider actual confusion. "[I]t is well established that no actual confusion is required to prove a case of trademark infringement." *Louis Vuitton Malletier S.A.*, 507 F.3d at 263. That said, "the absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006) (finding an inference of no likelihood of confusion where there was no evidence of confusion for nine years). And "[e]vidence of only a small number of instances of actual confusion may be dismissed as *de minimis*." *George & Co.*, 575 F.3d at 398 (finding four instances of consumer confusion de minimis). For example, in *CareFirst of Maryland, Inc. v. First*

20

*Care, P.C.*, we held that actual confusion was de minimis where only two percent of surveyed CareFirst consumers thought it was affiliated with First Care. 434 F.3d at 268.

Passport doesn't argue that there is evidence of actual confusion. Rather, it complains that the district court gave too much weight to the absence of such evidence. And it argues that there's a genuine dispute as to whether the period of Avance's overlapping use of "passport health" was substantial enough to overcome the lack of actual confusion.

Avance responds that there's a strong inference of no likelihood of confusion because its "passport health" AdWord campaign ran between January 2011 and April 2017 without any evidence of actual confusion. It also argues that even if we assume that all forty-one clicks on the advertisement from 2014 to 2017 were by confused consumers, that confusion is de minimis. In support, Avance notes that between February 2015 and April 2017, there were thirty clicks on the advertisement, which accounted for 0.012% of the total traffic to its website.

We agree with Avance on both points. No reasonable juror could find a likelihood of confusion where there were six years of overlapping use and there's no evidence of actual confusion. And even assuming that all forty-one clicks on the advertisement were by confused consumers, that confusion is de minimis.

D.

In sum, we've found that one factor—the similarity of Passport's and Avance's services—weighs in Passport's favor. The remaining factors—the similarity of Passport's

21

marks and Avance's use of the marks in its entirety, Avance's intent, and actual confusion—weigh in Avance's favor.

On this balance of factors, we agree with the district court that Avance is entitled to summary judgment on Passport's claims of trademark infringement, passing off, unfair and deceptive trade practices, and unfair competition because there's no likelihood of confusion as a matter of law. *See* 15 U.S.C. § 1114(1)(a) (requiring a likelihood of confusion for trademark infringement claims); *id.* § 1125(a)(1)(A) (same for passing-off claims); *Polo Fashions, Inc.*, 816 F.2d at 148 (in the context of trademarks, requiring "imitation of another's [mark] that would likely mislead prospective purchasers" for North Carolina unfair competition claims and "a tendency to deceive" for North Carolina unfair and deceptive trade practices claims).

This is so even assuming the strength of Passport's marks weighs in its favor. Indeed, in *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150 (4th Cir. 2014), we reached a similar conclusion. There, we held that

> [t]he district court properly found . . . that despite the fame of SWATCH and the similarity of the goods, the lack of similarity between the marks, lack of predatory intent, lack of similar advertising and only minimal similarity in facilities, in combination with the most significant factor, actual confusion, resulted in no likelihood of confusion between SWATCH and SWAP.

*Swatch*, 739 F.3d at 162 (cleaned up).

Here, any confusion from Avance's use of Passport's marks in its advertisement is dispelled by Avance's website, and any intent to confuse is dispelled by Avance's 2013 instruction to stop the "passport health" AdWord campaigns, along with ABT's effort to do so. Moreover, any actual confusion—the most significant factor—is de minimis at best.

22

As in *Swatch*, the lack of similarity between the marks, predatory intent, and actual confusion amounts to no likelihood of confusion here.

### III.

We next take up Passport's argument that the district court erred in not exercising diversity jurisdiction over its breach of contract claim.[10]

"Whether subject matter jurisdiction exists is a question of law that we . . . review de novo." *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). For diversity jurisdiction to exist, "the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). "For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members." *Id.* A party fails to demonstrate diversity jurisdiction, and the court must dismiss the case, where the record does not inform the court of the citizenship of each of the parties. *Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 93–94 (4th Cir. 1983).

---

[10] This claim stems from Avance's February 2013 letter to Passport stating that it was "no longer bidding on Passport Health keywords in Google or Bing" and would not do so in the future, J.A. 53, and Passport's subsequent voluntary dismissal of its 2013 suit against Avance. Passport contends that the letter was a binding settlement contract and that Avance breached it by continuing to bid on "passport health" in Bing.

In Passport's complaint, it asserted that the district court had diversity jurisdiction over its claims;[11] Passport is a limited liability company organized under Arizona law, with its principal place of business in Arizona; and Avance is a corporation organized under North Carolina law, with its principal place of business in North Carolina. Passport's complaint said nothing about the citizenship of all of its members.

Avance's motion for summary judgment alerted Passport of the need to demonstrate the court's jurisdiction over the contract claim. There, Avance argued that the district court should grant it summary judgment on Passport's trademark claims and decline to exercise supplemental jurisdiction over the contract claim. In response, Passport asserted that the court had diversity jurisdiction over the latter claim, but it again said nothing about the citizenship of its members. It stated only that "Passport is an Arizona company, Avance is a North Carolina company, so there is complete diversity of parties, and the amount in controversy is great[er] than $75,000." J.A. 483.

Passport now contends that the district court erred in not exercising diversity jurisdiction over the contract claim, asserting for the first time that none of its members are citizens of North Carolina. This assertion is too little too late; the record below contains no information regarding the citizenship of Passport's members. Thus, Passport failed to carry its burden of demonstrating diversity jurisdiction. And because Passport doesn't

---

[11] Passport also asserted that the court had federal question jurisdiction, jurisdiction under federal trademark law, and supplemental jurisdiction.

challenge the district court's decision not to exercise supplemental jurisdiction over the contract claim, we affirm the dismissal of the claim.

## IV.

For the reasons given, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*